[Cite as *State v. Tinney*, 2012-Ohio-72.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 2011 CA 41 |
| GLENN TINNEY | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No. 92 CR 239


JUDGMENT:      Affirmed in Part; Reversed in Part and Remanded


DATE OF JUDGMENT ENTRY:      January 9, 2012


APPEARANCES:

For Plaintiff-Appellant

JAMES J. MAYER, JR.
PROSECUTING ATTORNEY
BAMBI COUCH PAGE
ASSISTANT PROSECUTOR
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellee

KARLA MARKLEY HALL
OHIO INNOCENCE PROJECT
UNIVERSITY OF CINCINNATI
COLLEGE OF LAW
Post Office Box 21040
Cincinnati, Ohio 45221-0040

*Wise, J.*

{¶1} Appellant State of Ohio appeals the decision of the Court of Common Pleas, Richland County, which granted Appellee Glenn Tinney's post-sentence motion to withdraw his 1992 pleas of guilty for the murder of Ted White and a related aggravated robbery charge. The relevant facts leading to this appeal are as follows.

{¶2} In 1988, Ted White, the owner of a Mansfield waterbed business was struck in the head and robbed while inside his store. He died approximately two days after the attack. Appellee Glenn Tinney had formerly worked for Ted White. No one was immediately charged with any crimes related to the 1988 incident.

{¶3} In July 1990, Ashland County and Richland County law enforcement officials were investigating the unsolved killing of Gurcia Johnson, which had occurred in 1985. During that investigation, the Richland County Prosecutor's Office received a tip that Matt Mason, who was later convicted of aggravated murder of Johnson, may have been involved in assaulting a man at a waterbed store. The lead on Mason eventually led to an interview of appellee by a prosecutor's office investigator, Joe Masi. Appellee was incarcerated for other crimes at the time of this interview, which was conducted on March 31, 1992 at the Lebanon Correctional Institution.

{¶4} Although Masi advised appellee that he was considered merely as a witness at that time, and not a suspect, appellee voluntarily admitted to Masi that he was with Mason during the 1988 killing of Ted White. Appellee also said during the interview that at the time they entered the store, he was carrying a 9mm pistol and the "murder weapon", which he claimed to have handed to Mason, who then struck White in the head. According to appellee, he and Mason proceeded to rummage through the

store, stealing money and drugs on the premises. Appellee insisted to Masi that he and Mason, as they headed to the store, did not intend to kill White.

{¶5} On April 1, 1992, appellee told three Lebanon Correctional prison employees that he killed a former employer at a waterbed store. Appellee also requested that Masi come back and meet with him again.

{¶6} Appellee also gave a tape-recorded confession to Masi and Assistant Prosecutor David Mesaros on April 2, 1992. At that time, however, appellee would not implicate Mason, only himself.

{¶7} On June 17, 1992, during an interview with a Mansfield newspaper reporter, appellee implicated himself and an undisclosed individual known to appellee as the person who had fatally assaulted and robbed Ted White.

{¶8} Also, on June 24, 1992, appellee told Masi and Mansfield Police Captain John Arcudi that he and Mason were responsible for the murder and robbery of White.

{¶9} Upon further investigation, appellee was presented a plea deal, which he accepted, wherein he would plead guilty to White's murder (a reduction from potential aggravated murder and/or a death penalty specification) and one count of aggravated robbery, with the sentences to run concurrently. Appellee, with the assistance of counsel, entered said pleas to murder and aggravated robbery in the Richland County Court of Common Pleas on May 6, 1992.

{¶10} Appellee was sentenced on the same day to fifteen years to life for murder, ten to twenty-five years for aggravated robbery, concurrent to each other, but consecutive to a sentence appellee was then serving for burglary (case no. 89-CR-212). He took no direct appeal of his conviction and sentence.

{¶11} On July 22, 1992, appellee, with the assistance of counsel, filed a "Motion to Evaluate and Withdraw Plea," alleging issues with the appellee's competency. His counsel requested an opportunity to supplement his motion on October 13, 1992. On September 14, 1994, the trial court overruled said motion, finding that on May 6, 1992, appellee had been fully advised of his rights, both orally and in writing, and did knowingly, voluntarily and intelligently waive his rights and enter a plea of guilty. Appellee filed no direct appeal of the trial court's ruling and judgment on said motion.

{¶12} About twelve years later, on August 16, 2004, appellee, proceeding pro se, filed a second motion to withdraw his guilty plea. Appellee therein relied on, inter alia, a claim of actual innocence, opinions expressed by police detectives in a newspaper article and elsewhere, a claim that appellee was on psychotropic medication at the time of the confession, an assertion that police officers had offered him a radio and money for his confession, and a claim that appellee was not afforded "competent counsel." On February 22, 2005, the trial court overruled that motion to withdraw plea, finding appellee's plea had been voluntarily made.

{¶13} Appellee filed an appeal of the trial court's second ruling on March 23, 2005, along with a motion to proceed *in forma pauperis.* On August 30, 2005, we dismissed the appeal for want of prosecution.

{¶14} On August 17, 2005, appellee, proceeding pro se, filed a motion to vacate his sentence. Appellee based his request on *Blakely v. Washington* (2004), 542 U.S. 296, 124 S. Ct. 2541, 159 L. Ed. 2d 403. A review of the docket and the court file does not indicate a judgment entry was issued by the trial court addressing this motion. Appellee's motion was apparently not further pursued.

{¶15} On October 29, 2009, appellee filed the current petition for post-conviction relief and renewed motion to withdraw his guilty plea. The petition/motion included a psychological report on appellee, prepared with the assistance of the Ohio Innocence Project. Some of appellee's previous arguments and assertions were also contained within the petition. On November 30, 2009, the State filed its first response to said petition after being granted an extension to file same. On January 8, 2010, appellee filed a reply to the State's response. A transcript of the 1992 change of plea and sentencing was filed with the court on June 9, 2010.

{¶16} The matter was ultimately assigned to Judge James DeWeese, after Judge Henson voluntarily recused himself.

{¶17} Judge DeWeese held one pre-trial, and pursuant to the trial court's orders, the State and appellee filed additional supplemental pleadings with exhibits attached.

{¶18} The trial court issued a sixteen-page decision on March 25, 2011, denying appellee's petition for postconviction relief, but granting his motion to withdraw plea. It was from this decision that the State requested leave to appeal. This Court granted the State's request for leave on May 25, 2011.

{¶19} The State of Ohio herein raises the following four Assignments of Error:

{¶20} "I. THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION BY FAILING TO ADDRESS THE APPELLANT'S ARGUMENT THAT THE APPELLEE'S PETITION FOR POSTCONVICTION RELIEF AND MOTION TO WITHDRAW HIS GUILTY PLEA WAS BARRED BY THE DOCTRINE OF RES JUDICATA.

{¶21} "II. THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION WHEN IT IMPROPERLY OVERRULED THE APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPERLY GRANTING THE APPELLEE'S MOTION TO WITHDRAW HIS GUILTY PLEA.

{¶22} "III.  THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION WHEN IT FAILED TO HOLD A HEARING ON THE APPELLEE'S MOTION TO WITHDRAW HIS GUILTY PLEA AS REQUIRED BY LAW.

{¶23} "IV.  THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN IT FOUND THAT THE APPELLEE'S MOTION TO WITHDRAW HIS GUILTY PLEA SHOULD BE GRANTED TO CORRECT A MANIFEST INJUSTICE."

### General Standard of Review Re: Crim.R. 32.1

{¶24} Crim.R. 32.1 reads as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶25} Appellate review of a trial court's decision under Crim.R. 32.1 is limited to a determination of whether the trial court abused its discretion. See *State v. Caraballo* (1985), 17 Ohio St.3d 66, 477 N.E.2d 627. Under the manifest injustice standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *State v. Aleshire,* Licking App.No. 09-CA-132, 2010-Ohio-2566, ¶ 60, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 264, 361 N.E.2d 1324. The length of passage of time between the entry of a plea and a defendant's filing of a Crim.R. 32.1 motion is a valid

factor in determining whether a "manifest injustice" has occurred. See *State v. Copeland–Jackson,* Ashland App. No. 02COA018, 2003–Ohio–1043, ¶ 7.

I., II.

{¶26} In its First and Second Assignments of Error, the State contends the trial court erred in failing to consider or apply the doctrine of res judicata to appellee's motion to withdraw plea. We disagree.

{¶27} The doctrine of res judicata is applicable to successive motions to withdraw a guilty plea under Crim.R. 32.1. See, e.g., *State v. McLeod,* Tuscarawas App. No. 2004 AP 03 0017, 2004-Ohio-6199, ¶ 12. "Res judicata applies to bar raising piecemeal claims in successive postconviction relief petitions or motions to withdraw a guilty plea that could have been raised, but were not, in the first postconviction relief petition or motion to withdraw a guilty plea." *State v. Kent,* Jackson App.No. 02CA21, 2003-Ohio-6156, ¶ 6. The applicability of res judicata is a question of law, which an appellate court reviews de novo. *EMC Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 249, 841 N.E.2d 855, 2005-Ohio-5799.

{¶28} In the case sub judice, we find appellee has essentially presented two main bases for a claim of manifest injustice pursuant to his motion to withdraw plea. The first focuses on the inconsistencies within his five separate confessions in 1992 of involvement in the killing of Ted White in 1988. As well summarized in the chart the trial court prepared and included in the judgment entry under appeal, there were numerous instances of varying details given by appellee in his confessions of 3-31-92, 4-1-92, 4-2-92, 6-17-92, and 6-24-92. These included issues of the time of the attack on White, the location thereof in the store, the events leading up to and following the attack on White,

the method of transportation appellee used to get to the scene, the prior relationship or acquaintanceship between appellee and White, appellee's motive for wanting to rob or attack White, the mechanics of how White was struck with a weapon, what was actually stolen, and appellee's ability to recall details about White. Appellee has also presented, inter alia, the affidavit of Lieutenant John Wendling, a veteran Mansfield police detective who worked on the case in the late eighties and early nineties, who opines that appellee had nothing to do with White's murder, and that the main person of interest should be Matt Mason. See Appellee's Exhibit 3.

**{¶29}** The second basis for a claim of manifest injustice has to do with appellee's mental competency. Following the involvement in this case of the Ohio Innocence Project, appellee's mental health status and history was assessed by Todd Polumbo, M.D. and Scott Bresler, Ph.D. In their fifteen-page report, they conclude that appellee has major depressive disorder and borderline and antisocial personality traits. They further conclude, in part: "[Appellee's] mental illness appears to be persistent and has a chronic course that will manifest itself throughout his life. Based upon what we know about his diagnosis, it is certainly plausible that he might engage in impulsive masochistic acts such as falsely confessing to a crime while experiencing symptoms of an actively decompensated depressed (and possibly psychotic) state." Appellee's Exhibit 16, at 14-15.

**{¶30}** Appellee has thus presently obtained a much more extensive psychological evaluation than what was apparently available to him previously. We recognize the issue of his mental competency clearly was raised both in his 1992 and 2004/2005 motions to withdraw pleas. For example, in rejecting appellee's Crim.R. 32.1

motion in 2005, the trial court concluded in pertinent part: " *** There was no indication [during the plea proceedings] by defendant or by his conduct that he was in any way impaired by psychotropic drugs. He was lucid, oriented as to time and place[,] and his conduct and demeanor gave no indication that his plea was other than voluntary. It seems to be instructive that defendant apparently didn't remember until 2004 that he may have been taking psychotropic drugs and then only after reading that certain people were not convinced of his guilt. ***." Judgment Entry, February 22, 2005, at 2.

{¶31} However, we have previously held that the doctrine of res judicata "* * * is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." *Washburn v. Senff*, Stark App.No. 2002CA00393, 2003-Ohio-4379, ¶16, quoting *Bauer v. Huntington Nat. Bank* (Feb. 10, 2000), Franklin App.No. 99AP-347 (citations omitted). The confluence in this case of lingering concerns by some police officials of appellee's actual guilt and the issue of appellee's mental competency has, in our minds, at least heightened the possibility of an injustice done to appellee nearly twenty years ago.

{¶32} Accordingly, upon review, we find res judicata does not bar appellee's Crim.R. 32.1 motion. We further find the issue of res judicata as to the petition for post-conviction relief under R.C. 2953.21 to be moot, as the trial court denied same and appellee has not filed a cross-appeal herein.

{¶33} The State's First and Second Assignments of Error are overruled.

III.

{¶34} In its Third Assignment of Error, the State argues that the trial court erred in failing to conduct an evidentiary hearing on appellee's motion to withdraw plea. We agree.

{¶35} We have recognized that where a defendant, in a motion to withdraw plea, raises matters that are outside the trial court record, the only way such matters can be presented to the trial court to determine the existence of a manifest injustice is with a hearing. *State v. Boylen*, Stark App.No. 2002CA00179, 2002-Ohio-6983, ¶8, citing *State v. Watkins* (August 24, 1995), Richland App. No. 94CA20, 1995 WL 557012.

{¶36} Appellee, in response, does not dispute the existence of such case law, but he asserts that there is no precedent in Ohio for requiring a hearing before *granting* a Crim.R. 32.1 motion in favor of a defendant.  See Appellee's Brief at 20.

{¶37} In the case sub judice, a significant amount of documentary evidence was presented by each side in their memoranda supporting or arguing against appellant's motion to withdraw plea. This included police and other reports from 1988 and 1992, many of which have never been formally presented to a court previously. Furthermore, recent affidavits from police officers and other interested persons have been prepared and presented. And most notably, the fifteen-page psychological profile of appellee, prepared with the assistance of the Ohio Innocence Project, was provided to the court, even though it was not made under oath and does not indicate the conclusions therein were made to a reasonable degree of scientific certainty.

{¶38} Under these circumstances and given the passage of nearly twenty years since appellee pled guilty in this case, we conclude justice requires affording the State

an evidentiary hearing to allow full presentation as to whether appellee's plea in 1992 created a manifest injustice.

**{¶39}** The State's Third Assignment of Error is sustained.

IV.

**{¶40}** Based on the foregoing determinations, we find the arguments in the State's remaining assigned error to be moot or premature.

**{¶41}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed in part, reversed in part, and remanded for an evidentiary hearing.

By: Wise, J.

Hoffman, P. J., and

Edwards, J. concur.

_____

_____

_____

JUDGES

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellant            :
                                       :
-vs-                                   :           JUDGMENT ENTRY
                                       :
GLENN TINNEY                           :
                                       :
    Defendant-Appellee             :           Case No. 2011 CA 41


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part, reversed in part and remanded.

Costs to be split evenly between the Appellant State of Ohio and Appellee.


_____

_____

_____

               JUDGES