[Cite as *State v. Tinney*, 2014-Ohio-3053.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| GLENN TINNEY | : | Case No. 13CA18 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                             Pleas, Case No. 1992-CR-239D




JUDGMENT:                    Affirmed




DATE OF JUDGMENT:            July 10, 2014




APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

BAMBI COUCH PAGE                       DONALD R. CASTER
38 South Park Street                   Ohio Innocence Project
Mansfield, OH  44902                   Univ. of Cincinnati College of Law
                                       P.O. Box 210040
                                       Cincinnati, OH  45221

*Farmer, J.*

{¶1} On August 11, 1988, Ted White was working in his waterbed store when he was struck in the head and robbed. He died approximately two days later. No one was immediately charged with any crimes related to this incident.

{¶2} In July 1990, law enforcement officials were investigating the 1985 unsolved killing of Gurcia Johnson. The investigation led police to Matt Mason, who was eventually convicted of the aggravated murder of Mr. Johnson. The investigation revealed that Mr. Mason may have been involved in the crimes against Mr. White. The lead on Mr. Mason led law enforcement officers to interview appellee, Glenn Tinney.

{¶3} Over the course of three months, from March 31, 1992 to June 24, 1992, appellee gave investigators four different confessions. *See,* Trial Court's Chart of Confessions, attached to this Opinion as Exhibit A. Appellee subsequently pled guilty to one count of murder in violation of R.C. 2901.01 and one count of aggravated robbery in violation of R.C. 2911.01. By entry filed May 6, 1992, the trial court sentenced appellee to an aggregate term of fifteen years to life in prison. Appellee did not appeal his conviction and sentence.

{¶4} On July 22, 1992, appellee filed a motion to evaluate for competency and sanity and withdraw his guilty plea which the trial court denied on September 14, 1994. Appellee did not appeal this ruling.

{¶5} On August 16, 2004, appellee filed a second motion to withdraw his guilty plea. By entry filed February 22, 2005, the trial court denied the motion, finding appellee's plea had been voluntarily made. Appellee filed an appeal which was dismissed for want of prosecution.

{¶6} On October 29, 2009, appellee filed a petition for postconviction relief and renewed motion to withdraw his guilty plea. By decision filed March 25, 2011, the trial court denied appellee's petition for postconviction relief, but granted his motion to withdraw his guilty plea. Appellant, the state of Ohio, filed an appeal. This court remanded the matter to the trial court to hold an evidentiary hearing on appellee's motion to withdraw guilty plea. *See, State v. Tinney,* 5th Dist. Richland No. 2011 CA 41, 2012-Ohio-72.

{¶7} Upon remand, hearings commenced on September 27, 2012. By decision filed January 23, 2013, the trial court again granted appellee's motion to withdraw his guilty plea.

{¶8} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶9} "THE TRIAL COURT ABUSED ITS DISCRETION AS THE APPELLEE'S ARGUMENTS WERE BARRED BY THE DOCTRINE OF *RES JUDICATA*."

II

{¶10} "THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING AND CONSIDERING EVIDENCE OUTSIDE THE RECORD."

III

{¶11} "THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE APPELLEE'S MOTION BASED UPON THE APPELLEE'S ALLEGED MENTAL ILLNESS RATHER THAN UPON PROOF OF INCOMPETENCY."

IV

{¶12} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED THE APPELLEE'S MOTION TO WITHDRAW HIS GUILTY PLEA TO CORRECT A MANIFEST INJUSTICE WITHOUT PROPER EVIDENCE TO SUPPORT SUCH A FINDING AND AFTER AN UNREASONABLE DELAY."

V

{¶13} "THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION BY ADMITTING IMPERMISSIBLE HEARSAY INCLUDING BUT NOT LIMITED TO THE ADMISSION OF THE APPELLEE'S STATEMENTS WITHOUT THE APPELLEE TAKING THE WITNESS STAND."

VI

{¶14} "THE TRIAL COURT ABUSED ITS DISCRETION BY MISAPPLYING THE FACTORS OUTLINED IN STATE V. FISH TO ESTABLISH A MANIFEST INJUSTICE AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT AND CONTRARY TO THE EVIDENCE."

I

{¶15} Appellant claims appellee's arguments are barred by the doctrine of res judicata. Basically, appellant is asking this court to reconsider its decision on this issue made in the previous appeal, *State v. Tinney,* 5th Dist. Richland No. 2011 CA 41, 2012-Ohio-72. We disagree with appellant's arguments.

{¶16} In the previous appeal, Assignments of Error I and II stated the following at ¶ 20-21:

I. THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION BY FAILING TO ADDRESS THE APPELLANT'S ARGUMENT THAT THE APPELLEE'S PETITION FOR POSTCONVICTION RELIEF AND MOTION TO WITHDRAW HIS GUILTY PLEA WAS BARRED BY THE DOCTRINE OF RES JUDICATA.

II. THE TRIAL COURT ACTED CONTRARY TO LAW AND ABUSED ITS DISCRETION WHEN IT IMPROPERLY OVERRULED THE APPELLANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND IMPROPERLY GRANTING THE APPELLEE'S MOTION TO WITHDRAW HIS GUILTY PLEA.

{¶17} We addressed these assignments as follows at ¶ 31-32:

However, we have previously held that the doctrine of res judicata "* * * is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." *Washburn v. Senff*, Stark App.No. 2002CA00393, 2003-Ohio-4379, ¶16, quoting *Bauer v. Huntington Nat. Bank* (Feb. 10, 2000), Franklin App.No. 99AP-347 (citations omitted). The confluence in this case of lingering concerns by some police officials of appellee's actual guilt and the issue of appellee's mental competency has, in our minds, at least heightened the possibility of an injustice done to appellee nearly twenty years ago.

Accordingly, upon review, we find res judicata does not bar appellee's Crim.R. 32.1 motion. We further find the issue of res judicata as to the petition for post-conviction relief under R.C. 2953.21 to be moot, as the trial court denied same and appellee has not filed a cross-appeal herein.

{¶18} Appellant filed an appeal of this decision to the Supreme Court of Ohio, Case No. 2012-0322, but on May 9, 2012, the Supreme Court declined to accept jurisdiction:

Upon consideration of the jurisdictional memoranda filed in this case, the court declines jurisdiction to hear the case and dismisses the appeal as not involving any substantial constitutional question.

Upon consideration of appellant's motion to strike portions of appellee's memorandum in opposition, it is ordered by the court that the motion is denied.

{¶19} We find the law of the case doctrine explained in *Nolan v. Nolan,* 11 Ohio St.3d 1, 3, (1984), applies sub judice:

Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing

levels.\*\*\*Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law.

{¶20}  Assignment of Error I is denied.

II

{¶21}  Appellant claims the trial court erred in considering evidence outside the record.  We disagree.

{¶22}  Appellant argues the trial court's comparison of appellee's confessions vis-á-vis the facts was error because his plea of guilty abrogated the trial court's consideration of factual guilt.  In support, appellant relies on the following dicta from the Supreme Court of Ohio in *State v. Bush,* 96 Ohio St. 3d 235, 2002-Ohio-3993, ¶ 13:

R.C. 2953.21(J), part of the postconviction relief statutory scheme, provides that "the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case\*\*\*."  Given that a postsentence Crim.R. 32.1 motion is not collateral but is filed in the underlying criminal case and that it targets the withdrawal of a *plea,* it is not a "collateral challenge to the validity of a *conviction or sentence.*"  See *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281\*\*\*.

{¶23} This dicta, as Justice Cook acknowledged at ¶ 10-11 in *Bush,* cannot be read in a vacuum, but is tempered with the Supreme Court of Ohio's reaffirmation of its decision in *State v. Larry Reynolds,* 79 Ohio St.3d 158, 1997-Ohio-304 (post-sentence motion to withdraw guilty plea is separate and apart from a postconviction relief petition and is a distinct avenue for relief). In reviewing whether the doctrine of res judicata was applicable to a post-sentence motion to withdraw a guilty plea, filed after the time for direct appeal and postconviction relief, our brethren from the Third District in *State v. Daniel Reynolds,* 3rd Dist. Putman No. 12-01-11, 2002-Ohio-2823, ¶ 16-17, explained Crim.R. 32.1 permits in limited circumstances a criminal defendant who has pled guilty a third avenue to address error:

> In the limited circumstances where a criminal defendant has plead guilty, there is a third avenue by which to address error in a conviction or sentence. The criminal defendant who has plead guilty may collaterally attack his conviction or sentence by bringing a motion for a post-sentence withdrawal of a guilty plea pursuant to Crim.R. 32.1 which requires a showing of manifest injustice.
>
> A post-sentence motion to withdraw a guilty plea is permitted only in extraordinary cases and left to the sound discretion of the trial court with the burden of establishing manifest injustice borne by the defendant. *State v. Smith* (1977), 49 Ohio St.2d at 264, 361 N.E.2d 1324. Unlike petitions for post conviction relief, Crim.R. 32.1 does not require the showing of a constitutional violation. Nor does Crim.R. 32.1 require that

the manifest injustice occur within or outside the record. Rather, Crim.R. 32.1 leaves the defendant free to show manifest injustice in any manner that it may arise thus begging the question: does res judicata apply to motions filed pursuant to Criminal Rule 32.1? We find that answer to be in the affirmative.

{¶24} We concur with the Third District's rationale that a Crim.R. 32.1 motion, after a determination on the issue of res judicata, can address the issue of manifest injustice "in any manner that it may arise." *See, State v. Watkins,* 5th Dist. Richland No. 94CA20, 1995 WL 557012 (Aug. 24, 1995).

{¶25} Upon review, we conclude the trial court did not err in determining facts outside the original record and presented during the Crim.R. 32.1 hearing.

{¶26} Assignment of Error II is denied.

### III, IV, VI

{¶27} Appellant's Assignments of Error III, IV, and VI challenge the trial court's determination that appellee had meet the requirements of manifest injustice as contemplated by Crim.R. 32.1. Appellant claims the trial court relied on appellee's mental illness instead of his competency, permitted the motion after unreasonable delay, granted the motion without proper evidence to support its findings, and misapplied the factors set forth in *State v. Fish,* 104 Ohio App.3d 236 (1st Dist.1995). We disagree.

{¶28} Crim.R. 32.1 governs withdrawal of guilty plea and states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed;

but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The right to withdraw a plea is not absolute and a trial court's decision on the issue is governed by the abuse of discretion standard. *State v. Smith,* 49 Ohio St.2d 261 (1977). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983). Although the rule does not provide for a time limit to file a Crim.R. 32.1 motion after the imposition of sentence, "it has been held that an undue delay between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *Smith, supra,* at 264.

{¶29} In *State v. Minkner,* 2nd Dist. Champaign No. 2009 CA 16, 2009-Ohio-5625, ¶ 25, our brethren from the Second District explained "manifest injustice" as follows:

A defendant who files a post-sentence motion to withdraw his guilty plea thus bears the burden of establishing a "manifest injustice." *State v. Smith* (1977), 49 Ohio St.2d 261, paragraph one of the syllabus; *State v. Milbrandt,* Champaign App. No.2007-CA-3, 2008-Ohio-761, at ¶ 8. A manifest injustice has been defined as "a clear or openly unjust act" that involves "extraordinary circumstances." *State v. Stewart,* Greene App. No. 2003-CA-28, 2004-Ohio-3574, at ¶ 6. "[A] 'manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary

that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." *State v. Hartzell* (Aug. 20, 1999), Montgomery App. No. 17499. "Crim.R. 32.1 requires a defendant making a postsentence motion to withdraw a plea to demonstrate manifest injustice because it is designed 'to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe.' " *State v. Boswell,* 121 Ohio St.3d 575, 2009-Ohio-1577, at ¶ 9, quoting *State v. Caraballo* (1985), 17 Ohio St.3d 66, 67.

{¶30} "Manifest injustice" relates to some "fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process." S*tate v. Wooden,* 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588, ¶ 10, quoting *State v. Hall,* 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939, ¶12.

{¶31} In support of its arguments, appellant cites to the case of *Fish, supra,* paragraph two of the syllabus, wherein the First District set forth factors to consider in determining whether to grant a Crim.R. 32.1 motion:

A motion to withdraw a plea of no contest, made prior to the imposition of sentence, should be freely granted in the exercise of the trial court's discretion; one extremely important factor bearing on the exercise of the court's discretion is whether withdrawal will result in prejudice to the prosecution, but there are others to be weighed as well, including (1) the

representation afforded to the defendant by counsel; (2) the extent of the hearing conducted pursuant to Crim.R. 11; (3) the extent of the hearing on the motion to withdraw; (4) the amount of consideration given to the motion by the court; (5) the timing of the motion; (6) the reasons given for withdrawal; (7) the defendant's understanding of the charges and penalties; and (8) the existence of a meritorious defense.

{¶32} We note the *Fish* court involved a Crim.R. 32.1 motion "made prior to the imposition of sentence." However, as stated by appellee in his brief at page 29: "Nonetheless, many of the *Fish* factors are useful in guiding a trial court's exercise of discretion regarding the existence of manifest injustice."

{¶33} Appellee's October 29, 2009 Crim.R. 32.1 motion was based upon four points: 1) he was innocent, 2) his plea was not knowingly, intelligently, or voluntarily made, 3) ineffective assistance of trial counsel, and 4) the public deserved that the "true murderer" be punished. Appellee argued he suffered from "severe mental illness" and should be permitted to withdraw his guilty plea.

{¶34} In its decision filed January 23, 2013 granting appellee's Crim.R. 32.1 motion to withdraw his guilty plea, the trial court found the timing of the motion was not unreasonable:

The court has also previously ruled that the timing of the motion was not unreasonable. Mr. Tinney has never been out of prison since his first confession and has not himself been able to assemble the evidence

now used to support his motion.    Neither did he, until he got the assistance of the Innocence Project, have any advocate outside the prison to obtain the evidence which has now been marshaled.    Mr. Tinney's continuing mental illness limited his ability to assist in preparation of his motions.  The court accordingly finds the delay not unreasonable.

{¶35}  The trial court went on to find no undue prejudice to the state:

The remaining factors are the defendant's contention that he was not guilty of this murder balanced against the prejudice to the state in having to retry the defendant on the murder charge 24 years after the fact. The State contends that the police department's lead investigator, the coroner and other witnesses have died since the crime.  That loss of evidence will jeopardize any effort they would make to try him now.

But the state never tried to prosecute the defendant on any of the fresh evidence in the four years after the crime.  None of that evidence pointed to the defendant.  He could not have been convicted but for the confession he made four years after the fact as they sought other information from him.  In addition, the defendant has been in prison more than twenty years since receiving a 15 year to life sentence in May, 1992. If the State is correct about Mr. Tinney's guilt, he has not escaped punishment.

{¶36} Lastly, the trial court stated "while it is not possible to determine whether Mr. Tinney is innocent, his confessions do not provide any serious support for his conviction for murder" and "suggest that he is not guilty."

{¶37} As for the issue of prejudice to the state, as noted throughout the hearing, numerous members of the original investigation team (Coroner William Jeffrey, lead investigator Sergeant Tom Erre) as well as some witnesses are deceased, have moved out of the jurisdiction, or are in poor health.  T. at 1001-103.

{¶38} The coroner's report and evidence still exist and have been re-assembled as the testimony of Dr. Lisa Kohler, a Summit County medical examiner, illustrates. Most of the officers involved are still available (Randy Riggleman, David Messmore, and forensic scientist Anthony Tambasco) and the evidence is still intact.  Appellee's written statements and those investigators involved are still available, as are the various witnesses to the activities of appellee and his alleged co-conspirator, Matt Mason.

{¶39} We find the evidence supports the trial court's conclusion of no prejudice to the state.

{¶40} In its March 25, 2011 decision granting appellee's motion to withdraw his guilty plea prior to the remand for hearing, the trial court addressed the issue of ineffective assistance of trial counsel as alleged in appellee's October 29, 2009 Crim.R. 32.1 motion:

> ***The defendant's argument of ineffective assistance is unpersuasive.  Consequently, the defendant fails to demonstrate that ineffective assistance of Mr. Fry unavoidably prevented him from

discovering the facts on which his claim is based.  He does not meet the prerequisite for a delayed motion for relief from judgment in R.C. 2953.23(A)(1)(a).

{¶41}  In the trial court's Findings of Fact in both the March 25, 2011 and January 23, 2013 decisions, the trial court included an extensive analysis of appellee's four confessions given some four years after the crime.  *See,* Exhibit A attached to this Opinion.  This exhibit compares known facts of the crime to appellee's various statements about the crime.  We note appellee consistently admitted to the location of the murder (in the store, but not where in the store), the victim was the owner of Akron Waterbed Store, the motive was robbery and anger for firing him, money of various amounts and drugs were stolen, and Matt Mason was with him.  Inconsistencies arise as to the timing of the murder, the weapon used, the placement of blows, access to the store, amount of money stolen, and the inability to identify what the victim was wearing.

{¶42}  The pivotal issues as we perceive the trial court's decision are appellee's mental status and inconsistencies and errors in his statements vis-á-vis known facts:

The court concludes that Mr. Tinney's uncontrolled mental illness was a significant causative factor in his decisions to make his various confessions in 1992.

***

The comparison of Glenn Tinney's confessions demonstrates they are not consistent with the known facts about the killing of Ted White or

with each other. Mr. Tinney confessed to killing a man he could not identify, for conflicting motives which don't match the facts, at the wrong time of day, with a weapon that does not match the victim's injuries, by striking him in the wrong part of his head, and stealing items the victim either still possessed after the attack or probably never possessed.

*See,* Decision on Defendant's Motion to Withdraw his Guilty Plea, Findings of Fact, Defendant's Mental Condition and Mr. Tinney's Confessions, filed January 23, 2013.

{¶43} Under Conclusions of Law, the trial court addressed the voluntariness of appellee's plea and appears to have found it to have been voluntary with no apparent Crim.R. 11 defect:

The court has previously ruled [March 25, 2011 decision at 14] that the defendant had adequate legal representation at his plea from an attorney who subsequently attempted to have a court-ordered mental exam. There was no apparent defect in the Crim.R. 11 plea hearing. The defendant was an institutionalized criminal, and it was difficult to detect overt mental illness during his plea discussions and hearing.

{¶44} In the March 25, 2011 decision under "Ineffective Assistance of Counsel and Post-Conviction Relief," the trial court stated the following:

Mr. Frey represented Mr. Tinney when he pled guilty to murder in May, 1990. Mr. Fry knew Mr. Tinney had mental illness although Mr. Tinney was taking the medications prescribed for his illness and was competent to make decisions about his own case. Mr. Fry encouraged Mr. Tinney to plead "not guilty by reason of insanity." Mr. Tinney refused. Mr. Tinney wanted to avoid the death penalty. His confession could have supported an aggravated murder charge. Mr. Fry negotiated a murder charge. There was nothing in what Mr. Tinney said to Mr. Fry that unequivocally told him that Mr. Tinney was deluded about his confession. Mr. Fry also filed a post-conviction motion to withdraw Mr. Tinney's guilty plea and attempted to get a court ordered mental exam for Mr. Tinney.

{¶45} The record supports such a finding as the defense expert, Scott Bresler, Ph.D., and appellant's expert, James Karpawich, Ph.D., both forensic psychologists, opined appellee understood the proceedings and knew what he was doing when he entered his plea. T. at 387-388, 1137.

{¶46} However, in the January 23, 2013 decision, the trial court noted: "Mr. Tinney's mental illnesses documented by prison medical records and attested to by the psychologists seriously interfered with his understanding of the charges and consequences of his confession and suggest other motives for his plea." At first glance, this appears to be inconsistent with the finding of voluntariness, however, in reviewing the decision "in total," the trial court's decision was predicated on inconsistencies in appellee's statements and his mental condition at the time he made those statements.

{¶47} In over some 1400+ pages of testimony, there is the constant thread of appellee's position that he was severely depressed, seriously mentally ill, was subject to many incidents of falsifications to benefit himself, very despondent, paranoid, and not on his medications.  T. at 364-367, 369, 374, 1079-1084.  Although Dr. Bresler and Dr. Karpawich agree on some of these traits, they disagree as to the severity of appellee's mental state.  T. at 355, 424, 1074, 1077.  Notably, Dr. Bresler opined that appellant "might engage in impulsive, masochist acts such as false confessing to a crime while experiencing symptoms of an actively decompensated depressed and possibly psychotic state," whereas Dr. Karpawich found "no evidence that he was severely depressed, no signs he was psychotic, no signs that he had impaired reality testing, no signs that he was delusional, no signs that he had confused thinking or loose associations.  So none of the symptoms of a severe mental illness were present***."  T. at 364, 1082-1083.  Dr. Karpawich disagreed with Dr. Bresler's finding that in March 1992, appellee was morbidly depressed.  T. at 1084.

{¶48} Once clearing the air of the psychobabble argued, some things are certain, whether pre-confession or post, appellee is sharp, cognitive, extremely manipulative, deceitful in self-reporting symptoms in order to get drugs for barter, and dishonest.  These traits presented a whole panorama of mental illness issues to the various professionals during the course of appellee's institutionalization.

{¶49} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility

of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶50} In the trial court's detailed discussion of the consistencies and inconsistencies of the 1992 confessions, the trial court found them not to be proof of innocence, but susceptible to credibility issues and underlying motives as opined by Dr. Bresler. Although this panel might not see these inconsistencies, coupled with a voluntary plea, to substantiate a manifest injustice, we are not the trier of fact and only review this under an abuse of discretion standard.

{¶51} Although the language of Crim.R. 32.1 requires a showing of manifest injustice as discussed above, the standard of proof necessary is also reflected in federal habeas corpus proceedings. We address this only because the trial court's opinion finds doubt from the truthfulness of appellee's statements to the investigators. Appellee's position is that he is actually innocent and his mental state caused him to falsely confess.

{¶52} The trial court did not find ineffective assistance of trial counsel and did not conclude appellee was innocent, but did conclude the "confessions do not provide any serious support for his conviction for murder." *See,* Decision on Defendant's Motion to Withdraw his Guilty Plea, Conclusions of Law, filed January 23, 2013.

{¶53} Using the "actual innocence" requirement in habeas corpus cases, the United States Supreme Court has adopted a lesser burden. In *Schlup v. Delo,* 513 U.S. 298, 327, the United States Supreme Court stated, "[t]he *Carrier* standard requires the habeas petitioner to show that 'a constitutional violation has probably resulted in the

conviction of one who is actually innocent.'  477 U.S., at 496, 106 S.Ct., at 2649-2650."

The *Schlup* court further stated the following at 329:

> The meaning of actual innocence as formulated by *Sawyer* [*v. Whitley,* 505 U.S. 333 (1992)], and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.  Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

{¶54}  With the "probably" standard now accepted, we find the trial court's lack of a definitive finding of innocence does not require reversal.

{¶55}  Upon review, we find the trial court did not abuse its discretion in finding a manifest injustice.

{¶56}  Assignments of Error III, IV, and VI are denied.

V

{¶57} Appellant claims the trial court permitted impermissible hearsay and violated Evid.R. 802 by admitting appellee's statements without appellee taking the witness stand. We disagree.

{¶58} Appellee argued the statements made to police were not offered as proof of the matter asserted, but were presented to argue that appellant was not truthful, as his assertions were appositive to the actual known facts in several specific areas.

{¶59} We note Evid.R. 801(D)(1) and (2) are not applicable sub judice as appellee was not cross-examined and the statements were not offered by a party opponent.

{¶60} Appellee further points out that the trial court reviewed the statements not as proof of the matter asserted, but for the lack of credibility or truthfulness of the statements.

{¶61} In our review of the trial court's analysis, we find the decision does in fact hinge on the lack of credibility of appellee's statements:

Prison medical records show many inconsistent and false statements from the defendant about his family and criminal histories. For example he claimed grief over the death of a spouse and son he never had, and confessed to killing several unidentified people in Columbiana County between 1976 and 1980. He was diagnosed by prison mental health professionals as paranoid, schizophrenic, depressed, and antisocial. He was diagnosed as paranoid schizophrenic and prescribed

antipsychotics and antidepressants on 7-25-91 – less than ten months before his 5-6-92 guilty plea.

***

Dr. Bressler diagnoses the defendant with a major depressive disorder, severe with psychotic features (in partial remission) and personality disorder not otherwise specified with borderline and antisocial personality traits. He states, "Based on what we know about his diagnosis, it is certainly plausible that he might engage in impulsive masochistic acts such as falsely confessing to a crime while experiencing symptoms of an actively decompensated depressed (and possibly psychotic) state."

*See,* Decision on Defendant's Motion to Withdraw his Guilty Plea, Findings of Fact, Mr. Tinney's Confessions, filed January 23, 2013.

{¶62} Upon review, we do not find an abuse of discretion nor a violation of the hearsay rules on these very limited issues.

{¶63} Assignment of Error V is denied.

{¶64}  The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Hoffman, P.J. and

Baldwin, J. concur.

SGF/sg 520