[Cite as *State v. Eckley*, 2017-Ohio-8455.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 17-COA-009 |
| SHANNON ECKLEY | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Ashland County Court of Common Pleas, Case No. 12-CRI-127 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | November 6, 2017 |
| APPEARANCES: | |

For Plaintiff-Appellee

For Defendant-Appellant

CHRISTOPHER R. TUNNELL
Ashland County Prosecuting Attorney
110 Cottage Street
Ashland, Ohio 44805
By: VICTOR R. PEREZ
Assistant Prosecuting Attorney

GRETCHEN A. HOLDERMAN
Lillie & Holderman
2003 St. Clair Avenue
Cleveland, Ohio 44114

For Amicus Curiae

MAUREEN SHERIDAN KENNY
Human Trafficking Law Clinic
Case Western Reserve School of Law
11075 East Blvd.
Cleveland, Ohio 44106

*Hoffman, J.*

**{¶1}** Defendant-appellant Shannon Eckley appeals the judgment entered by the Ashland County Common Pleas Court overruling her motion to withdraw her guilty plea to two counts of child endangering (R.C. 2919.22(B)(2),(4)). Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On or about October 25, 2012, Appellant was caught shoplifting candy at a local convenience store. Although police offered her a ride home, she refused, stating she would rather go to jail than return to the home where she resided with her roommates, Jessica Hunt and Jordie Callahan.

**{¶3}** When police went to the home of Hunt and Callahan to investigate, Hunt and Callahan showed the police videos of Appellant beating her young daughter. On October 25, 2012, a complaint was filed in the Ashland County Common Pleas Court charging Appellant with two counts of child endangering, felonies of the third degree. On October 31, 2012, she entered a plea of not guilty. A bill of information was filed on December 7, 2012, stating as to Count One, Appellant repeatedly tied the child up and left her alone in a room for extended periods of time, in violation of R.C. 2919.22(B)(2). As to Count Two, the bill of information stated Appellant often and repeatedly struck the child in the face, in violation of R.C. 2919.22(B)(4).

**{¶4}** Appellant entered a plea of guilty on December 17, 2012. A presentence investigation was ordered, and a sentencing hearing was conducted by the court on February 12, 2013. During the time between the guilty plea and the sentencing hearing,

further investigation occurred into the conduct of Hunt and Callahan.   At the sentencing hearing, counsel for Appellant stated:

Your Honor, this is a case unlike any that I have seen in the 30 years that I have been doing this type of work.  It was about a week ago that Mr. Lange and the Prosecutor's office properly notified me that there was more to the facts of this case, that [sic] had been revealed to me, *even by my own client*, and it was late last week that I was served with Sergeant Baker's letters which the Court has in its possession, and that is when I really became aware of the magnitude of behaviors that occurred in that household. (Emphasis added.)

The first thought that I had was rather than a sentencing memorandum, is file a motion to withdraw the plea, and having discussed the matter with the State and also reviewing the mens rea requirement in this case, which is reckless, it was my thought that yes, in deed [sic], the State could prove the reckless state of mind required to commit this crime. Sent. Tr. 3-4.

**{¶5}**   Counsel continued:

However, the situation involved Shannon Eckley, basically being held hostage by two persons who threatened her, they assaulted her, the child was apparently put in danger by these two persons and those facts, I

believe, if I understand correctly, will be leading to some criminal charges themselves.

Now, Shannon may be a victim, but the child is a victim, and we are here for that reason, Your Honor. The question, and we could probably never answer, is suppose that Shannon Eckley had resisted, we will never know what kind of harm or how seriously this child might have been injured had they done that. Now, she is not a strong-willed person, unlike so many people that commit this crime where there are anger issues.

Sent. Tr. 5.

**{¶6}** The court sentenced Appellant to community control, including residential sanctions of 150 days in the Ashland County Jail, probation supervision through the Ohio Adult Parole Authority for a period of four years, and 200 hours of community service.

**{¶7}** Appellant filed a motion to withdraw her plea on November 21, 2016, or in the alternative to seal the record, arguing based on facts discovered following the issuance of a written opinion of the United States Court of Appeals for the Sixth Circuit in the criminal cases of Hunt and Callahan, the full extent of the abuse Appellant suffered at the hands of Hunt and Callahan became known, demonstrating she would not have been convicted of the criminal acts based on the defense of duress. The state filed a response, and Appellant filed a supplement attaching the opinion of the federal court, as well as the indictment filed in federal court against Hunt and Callahan. The federal circuit court of appeals affirmed Hunt's and Callahan's convictions of conspiracy, forced labor,

and acquiring a controlled substance by deception, the forced labor violation including the offense of kidnapping or attempted kidnapping.

{¶8} The facts as set forth in the opinion of the federal court tell the story of "two vulnerable individuals – S.E. [Appellant], a developmentally-disabled young woman, and her minor daughter, B.E. – held in subhuman conditions and subjected to continual and prolonged abuse." *United States v. Callahan,* 801 F.3d 606, 613 (6th Cir. 2015). Appellant has a documented history of cognitive impairment, and she and her daughter struggled to "eke out an existence at the margins of society." *Id.* Appellant was kicked out of her mother's house at the age of eighteen and was often thereafter homeless, living on social security benefits and other government assistance. *Id.*

{¶9} Appellant became acquainted with Hunt and Callahan through a group of people who abused narcotics and shoplifted together. *Id.* After she was released from jail for shoplifting in May, 2010, she moved in with Hunt and Callahan, and regained custody of her three-year-old daughter. *Id.* at 614.

{¶10} Hunt and Callahan forced Appellant to clean the apartment, do yardwork, care for their dogs, and run their errands. *Id.* They forced Appellant and her child to sleep in an unfinished basement, and later in a sparsely furnished bedroom, where they locked Appellant and her daughter inside at night without access to bathroom facilities. *Id.* The opinion sets forth graphic details of the inhumane conditions in which Appellant and her daughter were forced to live, and the dehumanizing behavior Appellant was subjected to in the household.

{¶11} The federal court's opinion further sets forth extensive evidence of physical abuse perpetrated on Appellant. Appellant complied with the demands of Hunt and

Callahan to work from morning until night because she believed they would physically assault her if she resisted, as they had done in the past. *Id.* On one occasion when Appellant exceeded the time limitation set for her to run an errand, Callahan interrogated her while playing "five finger fillet," a "game" in which Appellant spread her fingers, laid her hand on a table, and Callahan stabbed back and forth between her fingers with a knife *Id.* On another occasion when she took too long to run an errand, Callahan threatened Appellant's daughter at gunpoint. *Id.* If Appellant purchased items not on the shopping list, Hunt would punch her in the face or otherwise strike her on the head. *Id.*

{¶12} Appellant and her daughter were typically fed one meal a day, consisting of unheated canned food, bread, and unrefrigerated lunch meat. *Id.* at 615. When Appellant tried to take food from the refrigerator, Hunt beat her. *Id.* As to B.E., Appellant's daughter, Hunt and Callahan beat her, Hunt's sons assaulted her on various occasions, and one of Hunt's sons tied her up and kept her bound all night after she tried to drink a soda not intended for her. *Id.* One of Hunt's sons shot Appellant multiple times with a BB gun for disobeying an order. *Id.* Daniel Brown, an indicted co-conspirator, helped Hunt and Callahan assault Appellant when they discovered she planned to escape: Brown shaved Appellant's head, wrote obscenities on her face, and slammed her head into a kitchen sink, while Hunt and Callahan kicked her in the face and threw a soda bottle at her. *Id.*

{¶13} Hunt and Callahan also abused Appellant in order to force her to obtain prescription pain killers. They concocted a scheme in which Dezerah Silsby, an indicted co-conspirator, smashed Appellant's hand in a door and with a rock, and instructed Appellant to go to the emergency room to obtain pain killers. *Id.* When she returned with two painkillers and a prescription for Vicodin, they took the painkillers from her and sold

the prescription. *Id.* at 615-616. On another occasion, Callahan kicked Appellant in the hip with steel-toed boots, and Hunt ordered her to go to the emergency room and tell medical personnel she slipped on the ice and fell. *Id.* at 616. Appellant did as she was told and again received a Vicodin prescription. *Id.*

{¶14} Specifically relevant to the child endangering charges in the instant case, the federal court set forth the following facts:

> Defendants also ordered [Appellant] to beat B.E., and they recorded these beatings on their cell phones. Brown was also present on a few of these occasions and recorded the beatings on his phone as well. Defendants threatened to show the videos to law enforcement if S.E. ever failed to follow their orders or "snitched" on them. They often threatened [Appellant] with the prospect of having her daughter taken away from her. *Id.* at 615.

{¶15} In the instant case, the trial court overruled the motion to withdraw the plea without an evidentiary hearing. The court found no manifest injustice present in the instant case, as the circumstances giving rise to her claim of duress were known to her and her attorney at the time of her guilty plea. The court found the plea voluntary, intelligent, and knowing at the time it was entered, and the existence of federal criminal forced labor convictions of Hunt and Callahan did not give rise to any fundamental flaw in Appellant's proceedings, resulting in a miscarriage of justice.

{¶16} Appellant prosecutes her appeal from this February 28, 2017 judgment of the court, assigning as error:

"I.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO WITHDRAW PLEA TO CORRECT MANIFEST INJUSTICE.

"II.   THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD AN EVIDENTIARY HEARING ON DEFENDANT-APPELLANT'S MOTION TO WITHDRAW PLEA TO CORRECT MANIFEST INJUSTICE."

II.

{¶17} We first address Appellant's second assignment of error, as it is dispositive of the appeal.  Appellant argues the court erred in failing to hold an evidentiary hearing on her motion to withdraw her guilty pleas.  We agree.

{¶18} Crim. R. 32.1 governs the withdrawal of a guilty plea, stating, "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶19} "Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Williams*, 10th Dist. Franklin No. 03AP–1214, 2004–Ohio–6123, ¶ 5. " '[I]t is clear that under such standard, a postsentence withdrawal motion is allowable only

in extraordinary cases.' " *State v. Gripper*, 10th Dist. Franklin No. 10AP–1186, 2011–Ohio–3656, ¶ 7, quoting *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977).

**{¶20}** A trial court is not automatically required to hold a hearing on a post-sentence motion to withdraw a plea of guilty. A hearing must only be held if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea. *State v. Kent*, 10th Dist. Franklin No. 03AP722, 2004–Ohio–2129, ¶ 8.

**{¶21}** A trial court's decision whether to hold a hearing on the motion is subject to review for abuse of discretion. *Smith, supra*. The term "abuse of discretion" implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). However, we have recognized that where a defendant, in a motion to withdraw a plea, raises matters that are outside the trial court record, the only way such matters can be presented to the trial court to determine the existence of a manifest injustice is with a hearing. *State v. Tinney*, 5th Dist. Richland No. 2011 CA 41, 2012-Ohio-72, ¶35, *citing State v. Boylen*, 5th Dist. Stark No.2002CA00179, 2002–Ohio–6983, ¶ 8; *State v. Watkins,* 5th Dist. Richland No. 94CA20, 1995 WL 557012 (August 24, 1995).

**{¶22}** The court found the "circumstances giving rise to the Defendant's claim of duress were known to her and her attorney at the time of her voluntary guilty plea." Judgment Entry, February 28, 2017. However, her attorney represented to the court at the sentencing hearing, held nearly two months after the plea hearing, "It was about a week ago that Mr. Lange and the Prosecutor's office properly notified me that there was more to the facts of this case, that had been revealed to me, even by my own client, and

it was late last week that I was served with Sergeant Baker's letters which the Court has in its possession, and that is when I really became aware of the magnitude of behaviors that occurred in that household." Sent. Tr. 3-4. Therefore, the record supports Appellant's claim trial counsel was not aware of the full extent of the claim of duress at the time the plea was entered.

{¶23} Further, the presentence investigation report demonstrates during her interview, Appellant revealed far more limited details regarding the abuse she suffered at the hands of Hunt and Callahan than would later be revealed in the investigation. At the time of sentencing, a much more limited picture of the events occurring in the household had emerged than would later become clear following the convictions of Hunt and Callahan.

{¶24} The court further concluded at the time she entered the plea, Appellant "acknowledged an understanding of the various constitution [sic] rights she was waiving," including "waiving the right to pursue a duress defense by vigorously defending the charges at trial." Judgment Entry, February 28, 2017. At the time Appellant presented to the court for her plea hearing, she appeared to the court "mature, alert, reasonably educated and not under the influence of alcohol or drugs, and capable of understanding today's proceedings." Plea Tr. 8. However, the federal court's opinion noted she was developmentally-disabled. At the time of sentencing, counsel for Appellant recognized she "is not a strong willed person and functions at a low level intellectually." Sentencing Memorandum, February 8, 2013. Her limited level of intellectual understanding was not apparent to the court at the time the plea was entered, and the record does not support

the conclusion she necessarily understood she waived the defense of duress, particularly as her attorney was not aware of the extent of her abuse at the time the plea was entered.

{¶25} In addition, she entered the plea less than two months after she was removed from the home of Hunt and Callahan, having suffered two years of physical, emotional and mental trauma at their hands. Counsel, being unaware of the full nature of the details of her living circumstances, could not accurately assess the extent of psychological trauma she experienced at the time of the plea. Appellant may well be able to develop psychological evidence as to repressed memory and victim traumatization at a hearing if given the opportunity.

{¶26} We do recognize the delay in moving to withdraw the plea in the instant case was nearly four years after she entered the plea and fourteen months after the federal court issued its opinion. However, the Ohio Supreme Court has held untimeliness is not a bright-line rule, and will be of varying importance depending on the circumstances of the case. *State v. Francis,* 104 Ohio St. 3d 490, 820 N.E.2d 355, 2004-Ohio-6894, ¶42. Citing to *Francis,* the Eighth District Court of Appeals found in the absence of a hearing, the record was silent as to the reasons for a delay, and the court could therefore not evaluate whether the delay was reasonable under the facts and circumstances of the case. *State v. Kiss,* 8th Dist. Cuyahoga Nos. 91353, 91354, 2009-Ohio-739, ¶18. Similarly, in the instant case, the record is silent as to the reasons for the delay in the absence of a hearing.

{¶27} Finding an abuse of discretion in a trial court's judgment overruling a motion to withdraw, we previously held, "This court recognizes that this is a difficult case and that this court's standard of review is quite high. However, it is not an impossible standard."

*State v. Bennett*, 5th Dist. Stark No. 2004CA00369, 2006-Ohio-5632, ¶ 57.  The instant case is likewise a difficult case and while our standard of review is high, we find under this extraordinary set of facts, the court abused its discretion in failing to hold an evidentiary hearing on Appellant's motion to withdraw her guilty plea.

**{¶28}**  The second assignment of error is sustained.

I.

**{¶29}**  The first assignment of error is rendered premature by our ruling on the second assignment of error.

**{¶30}**  The judgment of the Ashland County Common Pleas Court is reversed. This case is remanded to that court for further proceedings according to law and this Opinion.

By: Hoffman, J.

Delaney, P.J.  and

Wise, John, J. concur