[Cite as *State v. Eckley*, 2019-Ohio-6.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 COA 014 |
| SHANNON ECKLEY | |
| | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, 12 CRI 127

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    January 2, 2019

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
PROSECUTING ATTORNEY
COLE F. OBERLI
ASSISTANT PROSECUTOR
110 Cottage Street
Ashland, Ohio  44805

For Defendant-Appellant

GRETCHEN A. HOLDERMAN
LILLIE & HOLDERMAN
2003 St. Clair Avenue
Cleveland, Ohio  44114

For Amicus Curiae

JOHN SALEM
NORTHEAST OHIO HUMAN
TRAFFICKING LAW CLINIC
1340 West 65th Street
Cleveland, Ohio  44102

*Wise, John, P. J.*

{¶1} Defendant–Appellant Shannon Eckley appeals the decision of the Court of Common Pleas, Ashland County, which, following our prior remand for a hearing, overruled her motion to withdraw her guilty plea to two counts of child endangering under R.C. 2919.22(B)(2)/(4). Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

<u>*State Prosecution of Appellant Eckley for Child Endangering*</u>

{¶2} On or about October 25, 2012, appellant was caught shoplifting candy at a convenience store. Although responding police officers offered her a ride home, she refused, stating she would rather go to jail than return to the house where she and her young daughter resided with two roommates, Jessica Hunt and Jordie Callahan. When the police went to the residence in question to further investigate, Hunt and Callahan showed the officers videos of appellant beating her young daughter.

{¶3} On October 25, 2012, a complaint was filed in the Ashland County Common Pleas Court charging appellant with two counts of child endangering, R.C. 2919.22(B)(2) and R.C. 2919.22(B)(4), felonies of the third degree. On October 31, 2012, appellant entered an initial plea of not guilty. A bill of information setting forth the same charges was presented on December 7, 2012.

{¶4} However, on December 17, 2012, appellant appeared with counsel before the trial court and entered a plea of guilty to both counts. A presentence investigation was ordered, and a sentencing hearing was conducted by the court on February 11, 2013. During the time between the guilty plea and the sentencing hearing, further investigation occurred into the conduct of Hunt and Callahan. Among other things, Sergeant Darcy

Baker of the Ashland Police Department prepared a letter to the trial court judge reporting that appellant had been living under harsh, captive conditions with Hunt and Callahan. At the sentencing hearing, defense counsel for appellant stated that the case was unlike any he had encountered in his career, stating that appellant had basically been "held hostage by two persons" who had threatened and assaulted her. Sentencing Tr. at 5. The guilty plea was nonetheless entered and the trial court accepted same.

{¶5} The trial court proceeded to sentence appellant to community control, including residential sanctions of 150 days in the Ashland County Jail, probation supervision through the Ohio Adult Parole Authority for a period of four years, and 200 hours of community service. *See* Judgment Entry of Sentence, February 12, 2013.

*Federal Prosecution of Jessica Hunt and Jordie Callahan*

{¶6} As set forth in a written opinion of the United States Court of Appeals for the Sixth Circuit, Hunt and Callahan were thereafter prosecuted under federal labor human trafficking laws. *See United States v. Callahan,* 801 F.3d 606, 613 (6th Cir. 2015). The facts as set forth in the opinion of the Sixth Circuit tell the story of "two vulnerable individuals—S.E. [Appellant], a developmentally-disabled young woman, and her minor daughter ***—held in subhuman conditions and subjected to continual and prolonged abuse." *United States v. Callahan, supra*, at 613. Appellant was described as having a documented history of cognitive impairment, and she and her daughter struggled to "eke out an existence at the margins of society." *Id.* Appellant was kicked out of her mother's house at the age of eighteen and was often thereafter homeless, living on social security benefits and other government assistance. *Id.* In 2010, she had been arrested for shoplifting. After she was released from jail for that incident in May 2010, she moved in

with Hunt and Callahan. They forced appellant to clean the apartment, do yardwork, care for their dogs, and run their errands. *Id.* at 614. They made appellant and her child sleep in an unfinished basement, and later in a sparsely furnished bedroom, locking them inside at night without access to bathroom facilities. *Id.*

{¶7} The Sixth Circuit opinion further describes the dehumanizing and physical abuse of appellant. Appellant complied with the incessant work demands of Hunt and Callahan because she believed they would physically assault her if she resisted, as they had done in the past. Appellant and her daughter were typically fed one meal a day, consisting of unheated canned food, bread, and unrefrigerated lunch meat. *Id.* at 615. When appellant tried to take food from the refrigerator, Hunt beat her. *Id.* Appellant was also violently attacked one occasion when she attempted an escape. *Id.*

{¶8} Hunt and Callahan also concocted a scheme to physically injure appellant to force her to obtain prescription pain killers. *Id.* They also ordered appellant to beat her daughter while they recorded the acts on their cell phones. They then threatened to show the videos to law enforcement if appellant ever failed to follow their orders or "snitched" on them. *Id.*

<u>*Appellant's Motion to Withdraw Guilty Plea*</u>

{¶9} On November 21, 2016, appellant filed a motion in the trial court to withdraw her guilty plea or, in the alternative, to seal the record, arguing based on facts discovered following the federal prosecution and the issuance of the aforementioned written opinion of the United States Court of Appeals for the Sixth Circuit in the criminal cases of Hunt and Callahan, more extensive information about the abuse appellant had suffered at the

hands of Hunt and Callahan had become known.[1] The State filed a response, and appellant filed a supplement attaching the opinion of the Sixth Circuit, as well as a copy of the federal indictment filed against Hunt and Callahan.

**{¶10}** In the instant case, via a judgment entry issued on February 28, 2017, the trial court overruled the motion to withdraw the plea without an evidentiary hearing. The court found *inter alia* the plea was voluntary, intelligent, and knowing at the time it was entered.

<u>Appellant's First Appeal</u>

**{¶11}** Appellant thereupon appealed to this Court from the February 28, 2017 judgment of the trial court. Upon review, we held the trial court had abused its discretion in failing to hold an evidentiary hearing on appellant's motion to withdraw her guilty pleas. We therefore reversed the trial court's decision and remanded the case for a hearing on November 6, 2017. *See State v. Eckley*, 5th Dist. Ashland No. 17-COA-009, 2017-Ohio-8455 ("*Eckley I*").[2]

<u>Proceedings Following Our Remand</u>

**{¶12}** Following our remand, the trial court set the matter for a hearing on January 29, 2018. Appellant tendered Maureen Guirguis of Case Western Reserve University as an expert witness on human trafficking. However, the State objected to any expert testimony from Guirguis on the grounds that appellant had failed to timely provide a

---

[1]   In that case, the Sixth Circuit Court of Appeals affirmed Hunt's and Callahan's convictions of conspiracy, forced labor, and acquiring a controlled substance by deception, the forced labor violation including the offense of kidnapping or attempted kidnapping.

[2]   *Eckley I* contains a more detailed account of the factual history of the matter again before us.

written expert report pursuant to Crim.R. 12. The hearing was therefore adjourned and rescheduled for March 12, 2018.

{¶13} In the meantime, the State filed a motion *in limine* concerning Guirguis as a witness. The trial court granted the State's motion and limited Guirguis' testimony to her areas of expertise, which the court determined to be internet human trafficking and drug-related human trafficking.

{¶14} At the March 12, 2018 hearing, the trial court first took judicial notice of the outcome of the federal labor human trafficking case described in *United States v. Callahan, supra.* Appellant then presented testimony from the federal prosecutor that had helped handle the case against Callahan and Hunt. Appellant then had Guirguis take the stand, as further discussed *infra.* The State of Ohio did not present any witnesses, but it introduced into the record certified copies of appellant's change of plea hearing and sentencing hearing.

{¶15} The trial court, via a judgment entry issued on March 15, 2018, denied appellant's motion to withdraw her guilty plea.

{¶16} On March 29, 2018, appellant filed a notice of appeal. She herein raises the following two Assignments of Error:

{¶17} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT-APPELLANT'S MOTION TO WITHDRAW PLEA TO CORRECT MANIFEST INJUSTICE WHERE THE EVIDENCE SHOWS THAT DEFENDANT-APPELLANT WAS IN CAPTIVITY AT THE TIME OF THE OFFENSE CONDUCT AND WAS FORCED BY HER CAPTORS TO SPANK HER CHILD.

{¶18} "II.   THE TRIAL COURT ABUSED ITS DISCRETION AND ACTED UNREASONABLY IN REFUSING TO RECOGNIZE MAUREEN GUIRGUIS, DIRECTOR OF THE HUMAN TRAFFICKING CLINIC AT CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW, AS AN EXPERT ON HUMAN TRAFFICKING ISSUES, AND, FURTHER ACTED ARBITRARILY IN LIMITING ITS CONSIDERATION OF HER TESTIMONY."

I.

{¶19} In her First Assignment of Error, appellant contends the trial court abused its discretion in denying her motion to withdraw her 2012 plea to two counts of child endangering. We disagree.

{¶20} Crim.R. 32.1 states as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶21} Our review of a trial court's decision under Crim.R. 32.1 is limited to a determination of whether the trial court abused its discretion. *State v. Caraballo* (1985), 17 Ohio St.3d 66, 477 N.E.2d 627. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. The Ohio Supreme Court has held that "* * * the good faith, credibility and weight of the movant's assertions in support of the [Crim.R. 32.1] motion are matters to be resolved by [the trial] court." *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324, paragraph two of the syllabus.

**{¶22}** A Crim.R. 32.1 motion is not a collateral challenge to the validity of a conviction or sentence, and instead only focuses on the plea. *See State v. Bush,* 96 Ohio St.3d 235, 773 N.E.2d 522, 2002–Ohio–3993, ¶ 13. Under the aforesaid "manifest injustice" standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *State v. Aleshire,* 5th Dist. Licking No. 09–CA–132, 2010–Ohio–2566, ¶ 60, citing *Smith, supra,* at 264.

**{¶23}** We first consider the timing of the motion to withdraw plea in the case *sub judice.* Crim.R. 32.1 contains no strict time requirements. *State v. Helms*, 7th Dist. Mahoning No. 14 MA 96, 2015-Ohio-1708, ¶ 10. However, we have recognized that the length of passage of time between the entry of a plea and a defendant's filing of a Crim.R. 32.1 motion is a valid factor in determining whether a "manifest injustice" has occurred. *State v. Croskey*, 5th Dist. Richland No. 2017 CA 0102, 2018-Ohio-2078, ¶18, citing *State v. Copeland–Jackson,* 5th Dist. Ashland No. 02COA018, 2003–Ohio–1043, ¶ 7. In this instance, appellant entered her plea of guilty to the two child endangering counts on December 17, 2012. Her motion to withdraw her plea (along with her alternate motion for sealing of the record) was filed on November 21, 2016, nearly four years later.

**{¶24}** In her motion, appellant argued, *inter alia*: "*** [Appellant's] charges in the instant case – and the fact that she was required to spend time in jail – in many ways ended up being a blessing. While [she] was in custody, she was interviewed extensively by the Ashland Police, and thereafter by the FBI, which eventually led to uncovering the fact that [she] and her daughter had actually been kidnapped, abused, and forced to live in subhuman conditions by Callahan and Hunt." Motion at 6.

**{¶25}** But we observe that appellant's trial counsel, at the 2013 sentencing hearing, specifically stated he was aware of a defense of duress, but he did not change course and pursue taking it to trial, even though he had obtained a letter from an investigating Ashland police officer, Sgt. Darcy Baker. *See* Sentencing Tr. at 4. Citing that letter, appellant's trial counsel's sentencing memorandum of February 8, 2013 states among other things that Hunt and Callahan "would encourage, if not order, [appellant] to physically abuse her young child."

**{¶26}** Appellant's defense counsel had specifically stated at sentencing:

Your Honor, this is a case unlike any that I have seen in the 30 years that I have been doing this type of work. It was about a week ago that [Assistant Prosecutor] Mr. Lange and the Prosecutor's office properly notified me that there was more to the facts of this case, that [sic] had been revealed to me, even by my own client, and it was late last week that I was served with Sergeant Baker's letters which the Court has in its possession, and that is when I really became aware of the magnitude of behaviors that occurred in that household.

The first thought that I had was rather than a sentencing memorandum, is file a motion to withdraw the plea, and having discussed the matter with the State and also reviewing the *mens rea* requirement in this case, which is reckless, it was my thought that yes, in deed [sic], the State could prove the reckless state of mind required to commit this crime.

**{¶27}** Sentencing Tr. at 3–4.

**{¶28}** Defense counsel had then continued:

However, the situation involved Shannon Eckley, basically being held hostage by two persons who threatened her, they assaulted her, the child was apparently put in danger by these two persons and those facts, I believe, if I understand correctly, will be leading to some criminal charges themselves.

Now, Shannon may be a victim, but the child is a victim, and we are here for that reason, Your Honor. The question, and we could probably never answer, is suppose that Shannon Eckley had resisted, we will never know what kind of harm or how seriously this child might have been injured had they done that. Now, she is not a strong-willed person, unlike so many people that commit this crime where there are anger issues.

**{¶29}** Sentencing Tr. at 5.

**{¶30}** The 2013 sentencing memorandum, as previously noted, likewise indicates that appellant's counsel at sentencing was aware that appellant was encouraged or ordered by her captors to hit her child. *See* Sentencing Memorandum at 1. We recognize that the full details of appellant's abuse at the hands of Hunt and Callahan may not have been known at the time of the change of plea and sentencing hearings, but the potential structure of a duress defense, *i.e.,* that appellant was ordered to hit her child while herself being threatened with physical violence, was apparent at the time of sentencing, when appellant could have withdrawn her plea prior to finalization of the convictions.

**{¶31}** Furthermore, even though appellant's defense counsel at sentencing likely did not fully know the full extent of the abuse, appellant was unfortunately familiar with the terrible facts. While her experience was undoubtedly traumatic, appellant had four

months between her arrest and her sentencing to say something on her behalf, but she apparently revealed little at that time. Furthermore, two months passed between the date of her plea and the trial court's issuance of her sentence.  Later, when presenting her motion to withdraw, appellant did not take the stand to explain her silence.

**{¶32}** In addition, as previously noted, the trial court sentenced appellant to community control, including residential sanctions of 150 days in the Ashland County Jail, probation supervision through the Ohio Adult Parole Authority for a period of four years, and 200 hours of community service. *See* Judgment Entry of Sentence, February 12, 2013. The parties herein do not dispute that appellant has now served her residential sanction time, probation, and community service requirements. Thus, although there may be some lingering costs to be paid, appellant's sentence appears virtually completed. We also again note appellant's motion to withdraw her plea sought, in the alternative, to seal the record of her conviction; however, such a remedy is barred under Ohio law due to the nature of her offenses. *See* R.C. 2953.36.

**{¶33}** In misdemeanor cases, a motion to withdraw a guilty plea after a sentence has been served and the fine paid is not moot if the appellant can assert a collateral disability. *See*, *e.g.*, *City of Maple Hts. v. McCants*, 8th Dist. Cuyahoga No. 80128, 2002-Ohio-1070, f.n. 2 (citations omitted). However, the Ohio Supreme Court has held that felony convictions result in collateral disabilities as a matter of law. *State v. Farris*, 1st Dist. Hamilton No. C-150567, 2016-Ohio-5527, ¶ 3, citing *State v. Golston,* 71 Ohio St.3d 224, 643 N.E.2d 109 (1994), syllabus. In the case *sub judice*, appellant claimed somewhat vaguely in her motion to withdraw plea that she had "recently made application for a new job." *See* Motion at 3. While there was no onus on appellant under Ohio law to

demonstrate a collateral disability in this instance, we find under such circumstances a trial court can still consider, as part of its overall Crim.R. 32.1 "manifest injustice" analysis, what future impact a felony conviction might have on a movant, particularly where a number of years has passed and the potential for incarceration has ended. In the present case, appellant's lack of testimony at the Crim.R. 32.1 hearing of March 12, 2018 severely limited the trial court's ability to factor into its decision what specific negative impact her convictions will have on her potential employment.

**{¶34}** Upon review, we are unpersuaded the trial court abused its discretion in declining to find a manifest injustice warranting the extraordinary step of negating appellant's plea following its evidentiary hearing upon our prior remand.

**{¶35}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶36}** In her Second Assignment of Error, appellant argues the trial court abused its discretion in failing to fully recognize one of her witnesses, a law professor and law clinic co-director from Case Western Reserve University School of Law, as an expert on human trafficking, and in limiting its consideration of her testimony. We disagree.

**{¶37}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case *sub judice*, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman*, 5th Dist. Stark No. 1999CA00027, 2000 WL 222190.

**{¶38}** Evid.R. 702 reads as follows:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶39}** In the case *sub judice*, at the Crim.R. 32.1 evidentiary hearing of March 12, 2018, appellant called Maureen Guirguis, co-founder and co-director of the human trafficking law clinic at Case Western Reserve University School of Law in Cleveland, Ohio. She is a 1998 *summa cum laude* graduate of the Cleveland-Marshall College of

Law. Her resume lists nearly three pages of formal presentations she has conducted since early 2015. In addition to her extensive background in the study of human trafficking, Guirguis had the opportunity to meet appellant and review her case.

**{¶40}** We note that at an earlier hearing on January 29, 2018, the trial court had in essence partially accepted Guirguis as an expert on human trafficking, limiting her recognized expertise to "drug-related human trafficking" and "internet human trafficking." But appellant had failed at that time to provide the State of Ohio with an expert report by Guirguis under Crim.R. 12, and the matter was continued. The State, on March 6, 2018, filed a motion in limine to prevent Guirguis from testifying in the matter. Appellant filed a response to the motion in limine on March 12, 2018. The trial court thereupon granted the State's motion in part and limited Guirguis' testimony for purposes of the March 12, 2018 hearing to what it considered her areas of expertise. *See* Tr. at 5-6.

**{¶41}** Despite the foregoing, and despite the fact Guirguis was not presented as a psychological expert, appellant's counsel was permitted to ask Guirguis if appellant's child endangering acts were of her free will. *See* Tr., March 12, 2018, at 61. Guirguis responded as follows to this crucial question. "I came to the conclusion that they were not of her free will because of the coercion that she was suffering under and the force and the daily beatings and all of the other degradation that she was dealing with at the time." *Id.* at 61-62.

**{¶42}** The record also reveals that at the March 12, 2018 hearing, the trial court took judicial notice of the outcome of the federal case in which Jordie Callahan and Jessica Hunt were prosecuted for labor human trafficking. Appellant also presented testimony from retired Assistant United States Attorney Thomas Getz, the lead prosecutor

in the federal criminal case against Callahan and Hunt. Getz thus described for the trial court some of the horrors and brutal treatment appellant had undergone at the hands of Callahan and Hunt.

{¶43} It is well-established that an appellant, in order to secure reversal of a judgment, must show that a recited error was prejudicial to her. *Tate v. Tate,* 5th Dist. Richland No. 02-CA-86, 2004-Ohio-22, ¶ 15, citing *Ames v. All American Truck & Trailer Service,* 6th Dist. Lucas No. L-89-295, 1991 WL 16509. Also, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *See, e.g.,* *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. Under the circumstances presented, we are unpersuaded that the trial court abused its discretion in its rulings concerning Guirguis' expert testimony.

{¶44} Appellant's Second Assignment of Error is overruled.

{¶45} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.

By: Wise, John, P. J.

Delaney, J., and

Wise, Earle, J., concur.

JWW/d 1218